UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED CHASSIS MANAGEMENT LLC, and CHICAGO-OHIO VALLEY CONSOLIDATED CHASSIS POOL LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHLAND INSURANCE COMPANY,<br><br>Defendant. | No. 1-19-cv-05287<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Consolidated Chassis Management LLC ("CCM") and Chicago-Ohio Valley Consolidated Chassis Pool LLC ("COCP") bring this action against Northland Insurance Company ("Northland") seeking a declaratory judgment and other relief. Northland answered Plaintiffs' complaint, filed a counterclaim, and then moved for judgment on the pleadings. Plaintiffs responded by filing a cross-motion for partial judgment on the pleadings. For the following reasons, the Court grants Northland's motion and denies Plaintiffs' motion.

**Standard of Review**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). The pleadings "consist of the complaint, the answer, and any written instruments attached as exhibits." *Housing Auth. Risk Retention Group, Inc. v. Chi. Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004). The Court may not look beyond the

1

pleadings, but the Court may take into consideration documents incorporated by reference to the pleadings. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991). The Court may also take judicial notice of matters of public record. *Id*.

"A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). Therefore, to survive a motion for judgment on the pleadings, "a complaint must state a claim to relief that is plausible on its face." *Bishop v. Air Line Pilots Ass'n, Int'l,* 900 F.3d 388, 397 (7th Cir. 2018) (citations omitted). When assessing the facial plausibility of a claim, the Court "views the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the [nonmoving party] cannot prove any facts that would support his claim for relief." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (internal citation and quotation marks omitted). "If it appears that discovery is necessary to fairly resolve a claim on the merits, then the motion for judgment on the pleadings must be denied." *Fed. Deposit Ins., Corp. v. FBOP Corp.*, 252 F. Supp. 3d 664, 672 (N.D. Ill. 2017) (citations omitted).

## Background

This action arises out of a different lawsuit pending before a different court. In July 2018, Ryan J. Gilliam-Nault—who is not a party to this suit—filed a complaint against CCM, COCP, Midvest Transport Corporation ("Midvest"), and Bakari Lambert. *See Ryan J. Gilliam-Nault v. Midvest Transports Corporation, et al.*, 18-cv-

049991 (N.D. Ill. July 20, 2018). In that complaint, Gilliam-Nault alleges that he was injured in an accident involving his car and a semi-tractor driven by Lambert, one of Midvest's employees. R. 1 ¶¶ 11-12 (citing R. 1-1 at 4). At the time of the accident, the semi-tractor was pulling an intermodal chassis that had been part of a chassis pool established by COCP and managed by CCM. R. 1 ¶ 12. Consequently, Gilliam-Nault's complaint names COCP and CCM as defendants and accuses them—along with Midvest and Lambert—of negligence. *See* R. 1-1 at 3-21. Northland is not a named defendant in the *Gilliam-Nault* action but its automobile liability policy allegedly covers Midvest, Lambert, COCP, and CCM. *See* R. 1 ¶ 16. In other words, all the defendants in the *Gilliam-Nault* action are insureds of Northland. *See id*.

After Gilliam-Nault filed his complaint, attorneys from the law firm of Schuyler, Roche & Crisham, P.C. ("SRC") filed appearances on behalf of CCM and COCP. *Id*. ¶ 15. About a month later, Northland sent a letter to CCM and COCP acknowledging its obligation as their insurer to defend and indemnify them in the *Gilliam-Nault* action. *Id*. ¶ 17. As part of that obligation, the letter said that Northland retained the law firm Litchfield Cavo to represent CCM and COCP in court. *Id*. ¶ 17. But the letter also contained an important wrinkle: it said that Northland was reserving its right to later decline coverage and seek recovery of defense costs expended on CCM and COCP's behalf. R. 1-1 at 25-27.

In a response letter, CCM and COCP told Northland that its reservation of rights created a conflict of interest. R. 1 ¶ 18. The letter said that the conflict entitled CCM and COCP to counsel of their own choosing—namely, SRC—at Northland's

3

expense. *Id*. ¶ 19. The letter also told Northland that a separate conflict of interest existed because CCM and COCP filed crossclaims against their co-defendants in the *Gilliam-Nault* action, and those defendants—as insureds of Northland—were represented by Litchfield Cavo as well. *Id*. ¶¶ 20-22. Northland withdrew its reservation of rights shortly thereafter and told CCM and COCP that doing so cured any conflict of interest that might have previously existed. *Id*. ¶ 23. Northland's response, however, did not address CCM and COCP's position that a separate conflict existed as a result of the crossclaims. *Id*. ¶ 23.

About four months later, CCM and COCP wrote another letter to Northland, reminding it of the alleged crossclaims conflict and raising another conflict. *Id*. ¶ 25. That is, according to CCM and COCP, discovery in the *Gilliam-Nault* action revealed the potential for the plaintiff to recover damages in excess of the $1 million limits of the Northland policy, thereby potentially leaving CCM and COCP open to exposure. *Id*. Accordingly, CCM and COCP told Northland that they were entitled to counsel of their own choosing for this reason, too, the costs of which must be paid by Northland. *Id*. CCM and COCP allege that Northland failed to respond to this letter, and further allege that Northland has refused to pay the invoices submitted by SRC for the work done on their behalf in the *Gilliam-Nault* action. *Id*. ¶¶ 26-28.

CCM and COCP filed this action in August 2019. *See* R. 1. Count I seeks declarations that: Northland is obligated to provide insurance coverage for CCM and COCP in the *Gilliam-Nault* action; Northland is obligated to defend and indemnify CCM and COCP in the *Gilliam-Nault* action; CCM and COCP are entitled to pick

4

independent counsel to represent them in the *Gilliam-Nault* action; Northland breached its obligations to pay for the defense of CCM and COCP in the *Gilliam-Nault* action; and CCM and COCP are entitled to reimbursement from Northland for all sums paid and to be paid to counsel of their choosing in defense of the *Gilliam-Nault* action plus prejudgment interest.[1] *Id.* ¶ 40. Count II similarly alleges that Northland breached its contract with CCM and COCP by failing to pay the defense costs incurred by SRC, and also alleges that Northland's conduct in resolving this dispute amounts to a violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155. *See id.* at 8-9.

Northland answered the complaint and asserted a counterclaim. *See* R. 12. Northland's counterclaim seeks a declaration that: Northland is entitled to select defense counsel for CCM and COCP in the *Gilliam-Nault* action; Northland owes no obligation to pay the attorneys' fees and litigation expenses of SRC in the *Gilliam-Nault* action; and CCM and COCP owe a duty to cooperate with Northland in their defense of the *Gilliam-Nault* action. *See id.* at 23.

CCM and COCP subsequently moved to dismiss Northland's counterclaim. *See* R. 32. CCM and COCP argued that the counterclaim was improper, non-justiciable, and a violation of the *Peppers* doctrine.[2] *See, e.g.*, R. 33 at 2. Around the same time,

---

[1] Count I also seeks a declaration that Northland breached its duty to defend, and is therefore estopped from raising any policy defenses to limit or deny coverage for CCM and COCP in the *Gilliam-Nault* lawsuit.

[2] CCM and COCP's argument relied on the legal principle that it is generally inappropriate for a court considering a declaratory judgment action to decide any "ultimate facts" that could bind the parties in the underlying litigation. *See* R. 33 at

5

Northland moved for judgment on the pleadings. *See* R. 36. The Court denied CCM and COCP's motion to dismiss, R. 44, and CCM and COCP subsequently answered Northland's counterclaim, R. 47. CCM and COCP then responded to Northland's motion for judgment on the pleadings and simultaneously filed a cross-motion for partial judgment on the pleadings as to Count I of their complaint. R. 65. CCM and COCP also asked the Court to enter judgment in their favor on Northland's counterclaim. *Id.*

Currently before the Court are the parties' cross-motions for judgment on the pleadings as to CCM and COCP's claims and Northland's counterclaim.

## Discussion

### I. Declaratory Relief

"In Illinois, an insurer has a broad duty to defend its insured in any action where the allegations in the complaint are even potentially within the scope of the policy's coverage." *Nat'l Cas. Co. v. Forge Indus. Staffing Inc.*, 567 F.3d 871, 874 (7th Cir. 2009). The insurer who exercises this duty makes all strategic decisions concerning the defense, including choice of counsel. *Id.* (citing *Am. Family Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 843 N.E.2d 492, 498 (Ill. App. Ct. 2006)); 14 Couch on Insurance 3d. § 200:1 ("Generally, liability insurance policies allow the

---

2 (citing *Maryland Cas. Co. v. Peppers*, 64 Ill. 2d 187 (1976)). The Court rejected CCM and COCP's argument, finding that the central question posed by Northland's counterclaim did not require the Court to decide any "ultimate facts" in the *Gilliam-Nault* action. *See* R. 44. To the extent CCM and COCP raise the same arguments here, *see* R. 64 at 7-9, the Court rejects them again for the same reasons articulated in the Court's denial of CCM and COCP's motion to dismiss.

6

insurer exclusive control over litigation against the insured."). The Northland policy incorporates this rule: "We have the right and duty to defend any 'insured' against a 'suit' asking for such damages." R. 12-2 at 30.

Insurer-appointed counsel has an ethical obligation to both the insurer and the insured. *Illinois Masonic Med. Ctr. v. Turegum Ins. Co.*, 522 N.E.2d 611, 613 (Ill. App. Ct. 1988). In reality, the insurer's attorney may have closer ties to the insurer than the insured and thus a greater interest in protecting the insurer's position. *See id.* "This is of no import when the interests of the insurer and its insured are aligned, but when they diverge, a conflict of interest arises." *Forge Indus. Staffing Inc.*, 567 F.3d at 874 (citing *Am. Family*, 843 N.E.2d at 498). Such a conflict provides the insured "the right to obtain independent counsel at the insurer's expense." *Id.* However, an "actual, not merely potential conflict is required in order to trigger" the insured's right to independent counsel. *Id.* (citing *Murphy v. Urso*, 430 N.E.2d 1079, 1083-84 (Ill. 1981)).

To determine whether a conflict exists under Illinois law, a court must "compare the allegations of the underlying complaint against the insured to the terms of the insurance policy at issue." *Forge Indus. Staffing Inc.*, 567 F.3d at 875 (citing *Am. Family*, 843 N.E.2d at 498). If, after doing so, it appears that insurer-retained counsel in the underlying suit can "shift facts in a way that takes the case outside the scope of policy coverage, then the insured is not required to defend the underlying suit with insurer-retained counsel." *Am. Family*, 843 N.E.2d at 498; *see also Turegum Ins. Co.*, 522 N.E.2d at 613-14.

7

This can occur "when the underlying complaint contains two mutually exclusive theories of liability, one which the policy covers and one which the policy excludes," such as "when the policy covers neglect but not intentional conduct." *Forge Indus. Staffing Inc.*, 567 F.3d at 875. Under this framework, the insured is required to allege how the insurer, in making strategic litigation decisions, could avoid any liability by shifting all losses to uncovered claims. *Id.* at 878 ("Simply put, if no fact issues appear on the face of the underlying complaint that can be conclusively resolved in such a way that insurance coverage is necessarily precluded under the policy, then appointment of independent counsel is not warranted."). Courts have also recognized that they may consider a reservation of rights letter in determining whether a conflict of interest exists. *See Stoneridge Dev. Co., Inc. v. Essex Ins. Co.*, 888 N.E.2d 633, 647 (Ill. App. Ct. 2008).

This case turns on whether there is an actual conflict of interest between the parties. According to CCM and COCP, at least two separate conflicts exist because: (1) CCCM and COCP filed crossclaims for contribution against Northland's other insureds in the underlying *Gilliam-Nault* action; and (2) the *Gilliam-Nault* plaintiff may recover damages in excess of the $1 million Northland policy limit. The Court discusses each argument in turn.

**A. CCM and COCP's Crossclaims Against Northland's Other Insureds**

CCM and COCP argue that their crossclaims for contribution against the other Northland insureds—Midvest and Lambert—establish a conflict of interest under Illinois law. CCM and COCP principally rely on the Illinois Supreme Court's rulings

8

in *Peppers* and *Murphy*. In *Peppers*, the insured shot someone and faced accusations of assault, negligence, and willful and wanton conduct. 355 N.E.2d at 28. The insurer's policy covered the insured for negligent conduct but not for intentional conduct. *Id*. Because there were two mutually exclusive theories of liability, and because the insurer controlled the insured's defense, a conflict emerged: the insured wanted to be found negligent because he was covered for such liability, while the insurer wanted a finding of intentional conduct in order to avoid coverage. *See id*. at 30.

A different but somewhat similar situation arose in *Murphy*. There, the court considered whether a conflict of interest existed when an insurer had a duty to defend two insureds with "diametrically opposed" defense strategies. 430 N.E.2d at 1083. One insured in *Murphy* was a bus driver, the other was the bus owner, and both were sued by a passenger after the bus crashed. *Id*. For the driver, the best defense strategy was to show that he was driving the bus at the time of the crash with the owner's permission, thereby bringing the claim against him within the policy coverage. *Id*. By comparison, the owner and insurer's best defense strategy was to show that the driver did not have permission to use the bus at the time of the crash, thereby pushing the claim outside of the policy coverage and shifting all liability onto him. *Id*. The *Murphy* court therefore concluded that a conflict existed, that the driver was entitled to independent counsel, and that a ruling that "required an insured to be defended by what amounted to his enemy in the litigation would be foolish." *Id*. at 1084.

The problem for CCM and COCP is that the conflicts of interest recognized in *Peppers* and *Murphy* are absent here. Indeed, there are no mutually exclusive theories of liability in the *Gilliam-Nault* action as only one claim is alleged—negligence. *See generally* R. 1-1 at 1-23. Northland, therefore, does not have the opportunity to steer the case into a non-covered claim and thereby relieve itself of paying any potential judgment. *See Peppers*, 355 N.E.2d at 30. And while Northland informed CCM and COCP in September 2018 that it was reserving its right to later decline coverage and seek recovery of defense costs (R. 1-1 at 25-27), Northland immediately withdrew that reservation as soon as CCM and COCP notified Northland of the potential conflict of interest (R. 1-1 at 32).[3] Moreover, the *Gilliam-Nault* pleadings show that the positions taken by CCM, COCP, Midvest, and Lambert are largely aligned, placing blame for the accident on the plaintiff. All four defendants deny acting negligently and plead affirmatively that Gilliam-Nault's contributory negligence caused his injuries. *See* R. 37-4 at 5-7, 9-11; R. 37-5 at 5-8, 9-11; R. 37-6 at 4-13, 15-18.

---

[3] Northland alleges in its counterclaim that counsel for CCM and COCP "are not cooperating with Northland in [the underlying] defense, thereby failing to comply with the 'cooperation' condition of the Northland policy." R. 12 at 22. CCM and COCP argue that this allegation is another example of Northland reserving its rights to defend and indemnify. *See* R. 64 at 12-13. But Northland's counterclaim specifically states that Northland "has reserved no rights to deny defense or indemnity to CCM or COCP, subject to its $1 million policy limit." R. 12 at 22.

.

To be sure, CCM and COCP's crossclaims against Midvest and Lambert complicate the parties' relationships. The crossclaims seek contribution in case CCM and COCP are required to pay more than their *pro rata* share of the liability. *See* R. 37-7. The crossclaims also allege "strictly in the alternative" that Midvest and Lambert's negligent acts caused the car accident. *Id.* But seeking contribution and making alternative allegations against other insureds does not mean that the parties are "diametrically opposed" nor does it mean that they are "enem[ies] in the litigation." As stated, the parties in *Murphy* were "diametrically opposed" because the insurer could avoid liability if it pushed all responsibility for the accident on the same party it had a duty to defend. 430 N.E.2d at 1083. No similar situation is alleged here. As Northland points out, no matter which insured in the *Gilliam-Nault* action is liable for the accident—if any liability is found at all—Northland is obligated to provide coverage up to its policy limit. *See* R. 37 at 12. The Court accordingly finds that CCM and COCP fail to plausibly allege a conflict of interest under *Murphy* or *Peppers*.

**B. Northland's $1 Million Policy Limit**

CCM and COCP also contend that a conflict of interest exists under *R.C. Wegman Const. Co. v. Admiral Ins. Co.*, 629 F.3d 724 (7th Cir. 2011) because the *Gilliam-Nault* plaintiff may recover damages exceeding Northland's $1 million policy limit, leaving CCM and COCP open to exposure. *See* R. 1 ¶ 25 (citing R. 1-1 at 35). CCM and COCP contend that under *Wegman*, a conflict of interest exists "when there is a 'nontrivial probability' of an excess judgment in the underlying suit." R. 64 at 11.

11

CCM and COCP's reliance on *Wegman* is misplaced, however, because that case dealt with a different basis for a conflict.

Indeed, the *Wegman* court trained its focus on the situation where an insurer fails to notify the insured of a known likelihood that the jury verdict will be significantly above the policy limit. 629 F.3d at 729. The Seventh Circuit said that such a situation wrongly invites the insurer to "[g]amble with [the] insured's money" by going to trial on claims that exceed the policy limit and hoping that any resulting liability will be less, despite the risk that the insured could be found liable for an amount greater than the limit. *See id.* at 728. Although CCM and COCP allege that the plaintiff in *Gilliam-Nault* may recover damages exceeding $1 million, they do not allege that Northland failed to notify them of an excess judgment or that Northland is somehow gambling with their money. *See id.*; *see also R.C. Wegman Const. Co. v. Admiral Ins. Co.*, 634 F.3d 371, 372 (7th Cir. 2011) (rejecting petition for rehearing and reiterating that insurer's failure to warn served as a basis for earlier decision).

In sum, CCM and COCP fail to plausibly allege a conflict of interest under Illinois law. Accordingly, Defendants' motion for judgment on the pleadings as to Count I is granted and Plaintiffs' cross-motion is denied.

## II. Breach of Contract and Request for Costs Under Section 155

Count II alleges that Northland breached its duty to pay the defense costs incurred by SRC in the *Gilliam-Nault* action, and therefore breached the parties' contract. *See* R. 1 at 8. To state a claim for breach of contract under Illinois law, a plaintiff must allege: (1) a valid and enforceable contract; (2) substantial performance

12

by the plaintiff; (3) a breach by the defendant; and (4) resultant damages. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 642 F.3d 834, 839 (7th Cir. 2010). For the reasons stated above, Northland did not breach the contract because CCM and COCP fail to allege that Northland is required to pay the costs incurred by SRC in the *Gilliam-Nault* action.

Count II also alleges that Northland engaged in "vexatious and unreasonable conduct" by failing to respond to CCM and COCP's communications and by failing to pay SRC. *See* R. 1 at 9. CCM and COCP accordingly seek relief under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155. *Id.* at 8-9. That provision provides that a court may award costs and attorney fees "[i]n any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable." 215 ILCS 5/155. If there is a *bona fide* dispute regarding coverage, statutory sanctions under Section 155 are inappropriate. *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1018 (Ill. 2003). Northland argues that there was a *bona fide* dispute, precluding recovery under Section 155. For their part, CCM and COCP effectively abandoned Count II by failing to defend it in their response to Northland's motion for judgment on the pleadings. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"). In any event, the Court agrees with Northland—a *bona fide* dispute existed between the parties, so recovery under

13

Section 155 is improper. *See* R. 1 ¶¶ 17-23, 25. Northland's motion for judgment on the pleadings as to Count II is therefore granted.

## Conclusion

For the above reasons, Northland's motion for judgment on the pleadings as to Counts I and II, R. 36, is granted while CCM and COCP's cross-motion for judgment as to Count I and Northland's counterclaim, R. 65, is denied. Because Northland's counterclaim asks the same fundamental question that the Court answered regarding CCM and COCP's complaint—whether a conflict of interest exists under Illinois law—the Court grants the counterclaim's request for declaratory relief: Northland may proceed with the defense of CCM and COCP in the *Gilliam-Nault* action using Northland's chosen counsel, and Northland owes no obligation to reimburse CCM and COCP for the expenses incurred by SRC.

There are no remaining claims. The case is accordingly dismissed with prejudice.

ENTERED:

*Thomas M Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: October 23, 2020