UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONSOLIDATED CHASSIS MANAGEMENT LLC, and CHICAGO-OHIO VALLEY CONSOLIDATED CHASSIS POOL LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHLAND INSURANCE COMPANY,<br><br>Defendant. | No. 1-19-cv-05287<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Consolidated Chassis Management LLC ("CCM") and Chicago-Ohio Valley Consolidated Chassis Pool LLC ("COCP") brought this action against Northland Insurance Company ("Northland") seeking a declaratory judgment and other relief. Northland answered Plaintiffs' complaint, filed a counterclaim, and then moved for judgment on the pleadings. Plaintiffs responded by filing a cross-motion for partial judgment on the pleadings. On October 23, 2020, the Court granted Northland's motion and denied Plaintiffs' motion. *See Consol. Chassis Mgmt. LLC v. Northland Ins. Co.*, 2020 WL 6262377, at *1 (N.D. Ill. Oct. 23, 2020) (hereinafter "the Order"). Plaintiffs then filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). R. 73. For the following reasons, Plaintiffs' motion is granted in part and denied in part.

1

## Background

As explained in the Order, this declaratory action arises out of a different lawsuit before a different court. In July 2018, Ryan J. Gilliam-Nault—who is not a party to this suit—filed a complaint against CCM, COCP, Midvest Transport Corporation ("Midvest"), and Bakari Lambert ("Lambert"). *See Ryan J. Gilliam-Nault v. Midvest Transports Corporation, et al.*, 18-cv-04991, Dkt. 1 (N.D. Ill. July 20, 2018). In that complaint, Gilliam-Nault alleged that he was injured in an accident involving his car and a semi-tractor driven by Lambert, one of Midvest's employees. R. 1 ¶¶ 11-12 (citing R. 1-1 at 4). At the time of the accident, the semi-tractor was pulling an intermodal chassis that had been part of a chassis pool established by COCP and managed by CCM. R. 1 ¶ 12. Consequently, Gilliam-Nault's complaint named COCP and CCM as defendants and accused them—along with Midvest and Lambert—of negligence. *See* R. 1-1 at 3-21. Northland is not a named defendant in the *Gilliam-Nault* action but its automobile liability policy allegedly covers Midvest, Lambert, COCP, and CCM. *See* R. 1 ¶ 16. In other words, all the defendants in the *Gilliam-Nault* action are insureds of Northland. *See id.*

After Gilliam-Nault filed his complaint, attorneys from the law firm of Schuyler, Roche & Crisham, P.C. ("SRC") filed appearances on behalf of CCM and COCP. *Id.* ¶ 15. About a month later, Northland sent a letter to CCM and COCP acknowledging its obligation as their insurer to defend and indemnify them in the *Gilliam-Nault* action. *Id.* ¶ 17. As part of that obligation, the letter said that Northland retained the law firm Litchfield Cavo to represent CCM and COCP in

court. *Id.* ¶ 17. Attorneys from Litchfield Cavo filed appearances in the *Gilliam-Nault* suit. *Id.* But the letter also contained an important wrinkle: it said that Northland was reserving its right to later decline coverage and seek recovery of defense costs expended on CCM's and COCP's behalf. R. 1-1 at 25-27.

In a response letter, CCM and COCP told Northland that its reservation of rights created a conflict of interest. R. 1 ¶ 18. The letter said that the conflict entitled CCM and COCP to counsel of their own choosing—namely, SRC—at Northland's expense. *Id.* ¶ 19. The letter also said that a separate conflict of interest existed because CCM and COCP filed crossclaims against their co-defendants in the *Gilliam-Nault* action, and as explained above, those defendants are also insured by Northland. *Id.* ¶¶ 20-22. The crossclaims sought contribution in case CCM and COCP are required to pay more than their pro rata share of the liability. *See* R. 37-7. The crossclaims also alleged in the alternative that Midvest's and Lambert's negligent acts caused the car accident. *Id.* Midvest and Lambert answered the crossclaims, denying that they acted negligently. *Id.*

Shortly after receiving the response letter, Northland withdrew its reservation of rights and told CCM and COCP that doing so cured any conflict of interest that might have previously existed. *Id.* ¶ 23. Northland's response, however, did not address CCM's and COCP's position that a separate conflict existed due to the crossclaims. *Id.* ¶ 23.

About four months later, CCM and COCP wrote another letter to Northland, reminding it of the alleged crossclaims conflict and raising another conflict. *Id.* ¶ 25.

3

That is, according to CCM and COCP, discovery in the *Gilliam-Nault* action revealed the potential for the plaintiff to recover damages in excess of the $1 million limits of the Northland policy, thereby potentially leaving CCM and COCP open to exposure. *Id*. Accordingly, CCM and COCP told Northland that they were entitled to counsel of their own choosing for this reason, too, the costs of which must be paid by Northland. *Id*. CCM and COCP allege that Northland failed to respond to this letter, and further allege that Northland has refused to pay the invoices submitted by SRC for the work done on their behalf in the *Gilliam-Nault* action. *Id*. ¶¶ 26-28.

CCM and COCP filed this action in August 2019. *See* R. 1. Count I seeks declarations that: Northland is obligated to provide insurance coverage for CCM and COCP in the *Gilliam-Nault* action; Northland is obligated to defend and indemnify CCM and COCP in the *Gilliam-Nault* action; CCM and COCP are entitled to pick independent counsel to represent them in the *Gilliam-Nault* action; Northland breached its obligations to pay for the defense of CCM and COCP in the *Gilliam-Nault* action; and CCM and COCP are entitled to reimbursement from Northland for all sums paid and to be paid to counsel of their choosing in defense of the *Gilliam-Nault* action plus prejudgment interest.[1] *Id*. ¶ 40. Count II alleges that Northland breached its contract with CCM and COCP by failing to pay the defense costs incurred by SRC, and also alleges that Northland's conduct in resolving this dispute amounts

---

[1] Count I also seeks a declaration that Northland breached its duty to defend, and is therefore estopped from raising any policy defenses to limit or deny coverage for CCM and COCP in the *Gilliam-Nault* lawsuit.

4

to a violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155. *See id.* at 8-9.

Northland answered the complaint and filed a counterclaim. *See* R. 12. Northland's counterclaim seeks a declaration that: Northland is entitled to select defense counsel for CCM and COCP in the *Gilliam-Nault* action; Northland owes no obligation to pay the attorneys' fees and litigation expenses of SRC in the *Gilliam-Nault* action; and CCM and COCP owe a duty to cooperate with Northland in their defense of the *Gilliam-Nault* action. *See id.* at 23.

CCM and COCP subsequently moved to dismiss Northland's counterclaim. *See* R. 32. CCM and COCP argued that the counterclaim was improper and non-justiciable. *See, e.g.*, R. 33 at 2. Their argument relied on the legal principal that it is generally inappropriate for a court considering a declaratory judgment action to decide any "ultimate facts" that could bind the parties in the underlying litigation. *See* R. 33 at 2 (citing *Maryland Cas. Co. v. Peppers*, 355 N.E.2d 24, 30 (Ill. 1976)). At a status hearing on February 19, 2020, the Court orally denied Plaintiffs' motion, finding that the central question posed by Northland's counterclaim did not require the Court to decide any "ultimate facts" in the *Gilliam-Nault* action. *See* R. 44. Plaintiffs subsequently answered Northland's counterclaim, *see* R. 47, and then responded to Northland's motion for judgment on the pleadings and simultaneously filed a cross-motion for partial judgment on the pleadings as to Count I of their complaint, *see* R. 65. Plaintiffs also asked the Court to enter judgment in their favor on Northland's counterclaim. *Id.*

5

On October 23, 2020, the Order granted Northland's motion for judgment on the pleadings as to Counts I and II, and denied Plaintiffs' cross-motion as to Count I and Northland's counterclaim. While Northland had not moved for judgment on the pleadings as to the counterclaim, the Order granted Northland's request for declaratory relief because the counterclaim asked the same fundamental question that the Court answered regarding Plaintiffs' complaint—namely, whether a conflict of interest had been plausibly alleged under Illinois law. Accordingly, the Order concluded that Northland may proceed with Plaintiffs' defense in the *Gilliam-Nault* action using Northland's chosen counsel, and that Northland owed no obligation to reimburse Plaintiffs for the expenses incurred by SRC.

About a month later, Plaintiffs filed their motion to alter or amend the judgment, which is currently before the Court. Briefing concluded in January 2021, though Plaintiffs moved for leave the following month to file additional authority and to supplement the record. *See* R. 78. In July 2021, Northland informed the Court that the parties in the underlying *Gilliam-Nault* action had reached an agreement to settle that case. *See* R. 83.[2]

---

[2] Northland's filing was framed as a motion "to spread the settlement of the underlying action of record herein." The filing does not explain what it means to "spread the settlement," and the Court has not heard that term used before. Nevertheless, the Court reasonably believes Northland's filing was intended to notify the Court that the *Gilliam-Nault* action settled for an amount within the $1 million policy limit.

6

**Standard**

A motion to alter or amend under Federal Rule of Civil Procedure 59(e) is not a vehicle to advance arguments or theories that could have been made before the Court rendered its judgment, or to present evidence that was available earlier. *LB Credit Corp. v. Resol. Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). However, a court may grant a motion under Rule 59(e) if the moving party: (1) establishes a manifest error of law or fact; or (2) presents newly discovered evidence. *Sigsworth v. City of Aurora*, 487 F.3d 506, 511-12 (7th Cir. 2007). A "manifest error" occurs when there has been a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotations omitted) (citation omitted).

**Analysis**

In Illinois, an insurer such as Northland "has a broad duty to defend its insured in any action where the allegations in the complaint are even potentially within the scope of the policy's coverage." *Nat'l Cas. Co. v. Forge Indus. Staffing Inc.*, 567 F.3d 871, 874 (7th Cir. 2009). The insurer who exercises this duty makes all strategic decisions concerning the defense, including choice of counsel. *Id.* (citing *Am. Family Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 843 N.E.2d 492, 498 (Ill. App. Ct. 2006)); 14 Couch on Insurance 3d. § 200:1 ("Generally, liability insurance policies allow the insurer exclusive control over litigation against the insured."). The Northland policy incorporates this rule: "We have the right and duty to defend any 'insured' against a 'suit' asking for such damages." R. 12-2 at 30.

However, an exception to this rule exists when there is a conflict of interest between the insurer and insured. *Williams v. Am. Country Ins. Co.*, 833 N.E.2d 971, 979 (Ill. App. Ct. 2005). A conflict provides the insured "the right to obtain independent counsel at the insurer's expense." *Forge Indus. Staffing Inc.*, 567 F.3d at 874. Under Illinois law, a conflict of interest exists if, comparing the claims in the underlying complaint to the terms of the policy, "the insurer's interests would be furthered by providing a less than vigorous defense to the allegations." *Williams*, 833 N.E.2d at 979.

Courts in Illinois have recognized at least two types of situations in which a conflict of interest warrants independent counsel. *See Joseph T. Ryerson & Son, Inc. v. Travelers Indem. Co. of Am.*, 165 N.E.3d 439, 459 (Ill. App. Ct. 2020) (describing the two situations); *Illinois Mun. League Risk Mgmt. Ass'n v. Siebert*, 585 N.E.2d 1130, 1136 (Ill. App. Ct. 1992) (same). The first situation is when proof of certain facts in the underlying litigation would shift liability from the insurer to the insured. In *Maryland Casualty Company v. Peppers*, for example, the insured shot someone and faced civil claims of assault, negligence, and willful and wanton conduct. 355 N.E.2d at 28. The insurance policy covered the insured for negligent conduct but not for intentional conduct. *Id*. Because there were two mutually exclusive theories of liability, and because the insurer controlled the insured's defense, a conflict emerged: the insured wanted to be found negligent because he was covered for such liability, while the insurer wanted a finding of intentional conduct to avoid coverage altogether. *See id.* at 30; *see also W.H. McNaughton Builders, Inc.*, 843 N.E.2d at 498

8

("[I]f, in the underlying suit, insurer-retained counsel would have the opportunity to shift facts in a way that takes the case outside the scope of policy coverage, then the insured is not required to defend the underlying suit with insurer-retained counsel.").

Another conflict-of-interest situation that Illinois courts have recognized—and the one that is more applicable here—arises when an insurer has a duty to defend two insureds in the same case who have "diametrically opposed" defense strategies. *See Murphy v. Urso*, 430 N.E.2d 1079, 1083 (Ill. 1981). In *Murphy*, a bus driver took a van after school hours and was involved in an accident that injured his passenger. The passenger sued the driver of the van and the preschool that employed him, and alleged that the driver was acting as the school's agent at the time of the accident— an allegation denied by the preschool. Travelers, the insurer, had a duty to defend both defendants and thus controlled both defenses. In finding a conflict, Illinois Supreme Court explained that:

> "To best defend the preschool, [Travelers] would try to show that [the driver] did not have permission to use the bus at the time of the accident . . . This would sever any connection between the preschool and [the driver], place all the liability on [the driver], and exonerate the school. But to best serve [the driver], Travelers had to try to show that he did have permission to use the bus. This would spread the liability to the schools.
>
> * * *
>
> The interests of [the preschool] and [the driver] in how the suit was to be defended were diametrically opposed, creating an ethical conflict for Travelers, which was charged with providing a full and vigorous defense to each. (*See* 79 Ill.2d, Code of Professional Responsibility, R. 5-105.) In order to defend either the schools or [the driver], Travelers had to resolve the conflict and pick a strategy of defense. How could it do so for one without harming the other?"

9

*Murphy*, 430 N.E.2d at 1083.

A similar situation arose in *Williams v. American Country Insurance Company*, 833 N.E.2d 971 (Ill. App. Ct. 2005). The plaintiff in that case was injured after leaning inside a taxi cab. He filed suit against the driver and the company that owned the cab, alleging that the driver was an agent of the company at the time of incident. The insurer for the driver and company undertook their defenses. In the company's answer to the plaintiff's complaint, the company denied that the driver was acting as its agent.

The *Williams* court found that a conflict existed under *Murphy*, as the insurer "was charged with providing a full and vigorous defense" to both the cab company and the driver, whose interests in the underlying suit were in opposition to each other." *Williams*, 833 N.E.2d at 980. More specifically, the court said that it was in the driver's best interest to argue that he was an agent of the company, while it was in the company's best interest to establish the opposite. *Id*. Since the interests of the driver and the cab company were "diametrically opposed," the insurer was presented with "an ethical conflict where it could not choose a defense strategy in the underlying action without harming either [the driver] or [the company]." *Id*.

In their motion to reconsider, Plaintiffs argue (as they did in their previous filings) that a conflict of interest exists under *Murphy*. According to Plaintiffs, it is in their best interest to blame the underlying accident on three different parties—the *Gilliam-Nault* plaintiff, Midvest, and Lambert—while it is in Midvest's and Lambert's best interests to point the proverbial finger only at the *Gilliam-Nault*

10

plaintiff. Since Northland has a duty to defend Midvest, Lambert, and Plaintiffs, and since Plaintiffs have a defense strategy that is "diametrically opposed" to their co-insureds, Plaintiffs contend that they are entitled to independent counsel.

Plaintiffs have a valid point. Given the allegations in the crossclaims that Midvest and Lambert were negligent in causing the accident (allegations which Midvest and Lambert denied), Northland's chosen counsel has to pick a strategy.[3] If counsel pursues Plaintiffs' allegations, then doing so will harm Midvest and Lambert. But if the allegations are not pursued, then the harm likely falls on Plaintiffs. Indeed, Plaintiffs presumably want the *Gilliam-Nault* fact-finder to hear as much evidence as possible that *other* parties were responsible for the accident, even if those parties are co-insureds. That way, the blame is spread throughout, much the same way the *Murphy* driver had an interest in spreading liability to the preschool. And although it's true that Plaintiffs, Midvest, Lambert, and Northland have a shared interest in arguing that the *Gilliam-Nault* plaintiff was solely responsible for the accident, Illinois courts have said that shared interests alone do not dispose of a conflict. *See, e.g.*, *Murphy*, 430 N.E. 2d at 1083; *W.H. McNaughton Builders, Inc.*, 843 N.E.2d at 499 ("[I]t is not dispositive that [insured] and [insurer] would both benefit from [insured] being found not liable in the Begy Suit. Indeed, an insurer and its insured

---

[3] While the *Gillian-Nault* action settled after the Order was issued, this section of the opinion is written in the present tense since the conflict-of-interest inquiry does not turn on whether the underlying case has settled. *See Nandorf, Inc. v. CNA Ins. Companies*, 479 N.E.2d 988, 993 (Ill. App. Ct. 1985) (finding that a settlement favorable to the insured did not justify exercising hindsight to negate the existence of a conflict of interest).

will always have a shared interest in the insured's being absolved of liability."). Thus, the question raised in *Murphy* must also be raised here: how can Northland—which is charged with providing a full and vigorous defense to all four of its insureds—choose a defense strategy without harming one of them?

The Court acknowledges that the Order reached conclusions that are in tension with these findings. For example, the Order said that no conflict had been sufficiently alleged in part because Northland has agreed to cover any judgment up to the policy limit. *See* Order at 11 (citing R. 37 at 12). But as explained, Plaintiffs do not want any liability imposed against them—even if the judgment won't be paid directly out of their pockets. Put differently, they want to be fully exonerated. *Cf. Illinois Masonic Med. Ctr. v. Turegum Ins. Co.*, 522 N.E.2d 611, 617 (Ill. App. Ct. 1988) (explaining how insured's "overall interests would be best served by a vigorous defense against all of the allegations and a resultant finding of no [wrongdoing] whatsoever"). The Order also stated that no conflict had been sufficiently alleged because Northland couldn't manipulate the *Gilliam-Nault* proceedings in a way to avoid coverage by placing all the blame on one of its insureds. *See* Order at 11. That still appears true. But the Order did not fully appreciate the multiple conflicts recognized in *Murphy*. Indeed, two different conflicts existed in that case—one between the two insureds (as discussed), and a separate conflict between Travelers and the bus driver. *See Murphy*, 430 N.E.3d at 1083 (describing the first conflict between the two insureds and then explaining the second conflict and how Travelers' interest "lay in separating [the driver] from the school so that he would bear the entire liability"). The Order relied

12

too much on the second conflict when it should have found that the first conflict—between the two insureds—has been adequately alleged here.

The Court also acknowledges that this case is not on all fours with *Murphy*. For one thing, the *Gilliam-Nault* action is not entirely based on issues related to agency. Nor does it concern whether a driver had permission to use a car. And despite extensive research, the Court has not found a conflict-of-interest case in the insurance context with facts similar to those alleged here. But that does not mean the "diametrically opposed" conflict recognized in *Murphy* cannot extend to this case. After all, the *Murphy* court went out of its way to clarify that its holding was not limited to the specific facts of that case, stating that "[t]he particulars of the conflict of interest do not matter, only the fact that there is a conflict at all. The insured has the right to be defended by counsel of his own choosing." 430 N.E.2d at 1084.

While Northland's response to the motion to reconsider advances several arguments, none directly address *Murphy*. For example, Northland argues that the Court should disregard deposition testimony presented in Plaintiffs' motion. R. 76 at 4-5. But the Court need not consider that testimony in order to resolve the motion, so that argument is meritless. Northland also contends, contrary to Plaintiffs' position otherwise, that the Order did not violate the *Peppers* doctrine by deciding an ultimate fact that could bind the parties in the underlying litigation. R. 76 at 5-6. The Court agrees with Northland, but again, that argument doesn't affect the outcome here.

Both parties point to *Forge Industrial*, where the Seventh Circuit discussed whether independent counsel was required in a case that involved mutually exclusive

13

theories of liability. 567 F.3d at 871. Northland argues that under *Forge Industrial*, independent counsel is available "only" when the underlying complaint alleges mutually exclusive theories of liability or when non-covered damages are significantly larger than covered damages. R. 76 at 7. But this Court does not read *Forge Industrial* so narrowly. Nowhere in that case did the Seventh Circuit disclaim the conflict recognized in *Murphy* involving "diametrically opposed" defense strategies. In fact, the Seventh Circuit expressly acknowledged that type of conflict in a case decided after *Forge Industrial*. *See Fox v. Am. Alternative Ins. Corp.*, 757 F.3d 680, 682 (7th Cir. 2014) (noting that a conflict may arise when the "the interests of multiple insureds are 'diametrically opposed'"). So, *Forge Industrial* is not dispositive for Northland.

Finally, Northland argues that an insurer such as itself does not lose its right to control its insured's defense in the absence of a reservation of rights, and points out that it has "reserved no rights to deny coverage." R. 76 at 8. But Illinois courts have repeatedly stated that when a conflict of interest arises, instead of participating in the defense itself, the insurer must step aside and pay the costs of independent counsel, notwithstanding any reservation. *See, e.g.*, *Country Mut. Ins. Co. v. Olsak*, 908 N.E.2d 1091, 1098-99 (Ill. App. Ct. 2009); *Illinois Masonic Med. Ctr. v. Turegum Ins. Co.*, 522 N.E.2d 611, 613 (Ill. App. Ct. 1988). The Court therefore rejects Northland's position that it can control Plaintiffs' defense so long as it does not reserve its rights.

In the end, Plaintiffs have demonstrated a manifest error of law based on a wholesale misapplication of controlling precedent. A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6). *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) ("The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same."). As explained, Plaintiffs have plausibly stated that a conflict of interest exists under *Murphy* such that they were entitled to independent counsel in the *Gilliam-Nault* action. Thus, the Order should not have granted Northland's motion for judgment on the pleadings, nor should it have denied Plaintiff's partial motion for the same. Plaintiffs' motion to alter or amend the judgment based on an incomplete reading of *Murphy* is granted.

Nonetheless, the Court does not grant Plaintiffs' motion in its entirety. Indeed, to the extent Plaintiffs continue to argue that they have stated a conflict under *R.C. Wegman Const. Co. v. Admiral Ins. Co.*, 629 F.3d 724 (7th Cir. 2011), that argument is rejected again. *Wegman* focused on the situation where an insurer fails to notify its insured of a known likelihood that the jury verdict will be significantly above the policy limit. 629 F.3d at 729. The Seventh Circuit said that such a situation wrongly invites the insurer to "[g]amble with [the] insured's money" by going to trial on claims that exceed the policy limit and hoping that any resulting liability will be less, despite the risk that the insured could be found liable for an amount greater than the limit. *See id.* at 728; *see also R.C. Wegman Const. Co. v. Admiral Ins. Co.*, 634 F.3d 371, 372 (7th Cir. 2011) (rejecting petition for rehearing and reiterating that insurer's failure

15

to warn served as a basis for earlier decision). As a supplement to their motion to reconsider, Plaintiffs point to a settlement demand made after the Order was entered in which the *Gilliam-Nault* plaintiff asked for an amount exceeding Northland's policy limit. But that settlement demand does not demonstrate that Northland failed to notify Plaintiffs of a known likelihood that the jury verdict will be significantly above the policy limit. And nothing else in the pleadings seem to indicate that there has been a failure to notify. The Order's findings regarding *Wegman* therefore remain the same.

## Conclusion

For the reasons discussed in this opinion, Plaintiffs' motion to alter or amend the Order, R. 73, is granted in part and denied in part. Nothing in this opinion should be construed to mean that the Court has taken a position on Plaintiffs' claim that Northland engaged in vexatious and unreasonable conduct in violation of Section 155 of the Illinois Insurance Code. *See* R. 1 at 8-9. No position on that argument has been taken. A status hearing is set for September 17, 2021, at which time the parties should be expected to discuss how they would like to proceed.

ENTERED:

*Thomas M Durkin*

———————————————
Honorable Thomas M. Durkin
United States District Judge

Dated: September 2, 2021